**In re ALDEN et al.**

**Patent Appeal No. 3645.**

Court of Customs and Patent Appeals.
Feb. 24, 1936.

HATFIELD and GARRETT, Associate Judges, dissenting.

———◆———

Strauch & Hoffman, of Washington, D. C. (William A. Strauch and James A. Hoffman, both of Washington, D. C., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner in rejecting claims 12, 13, 15, 21, and 25 to 27, inclusive, of appellants' application for patent, filed March 16, 1934, serial No. 716,008.

Appellants' application is for reissue of a patent, 1,882,694, issued October 18, 1932, to appellants, as assignors to the Timken Silent Automatic Company, of Detroit, Mich., for an improvement in oil burners. As shown by the application, the subject-matter of the claimed invention is a device constituting a burner head and mounting therefor. The Examiner thus describes the device and its action:

"The invention relates to an oil burner (best shown in Fig. 2) of that type in which a rotary head is disposed centrally of a hearth and sprays oil to the outer periphery of the hearth, where combustion takes place. * * *

"The rotary head is supported by the shaft 18 and comprises the channel member 29, into which oil is delivered by the stationary pipe 26-27, and the oil distributing head 14, through which project the distributor pipes 34 through which the oil is discharged by centrifugal force. Supported on the head is a fan 20, having the disk portion 22 and a peripheral down-turned flange with blades, certain of which are omitted opposite the discharge ends of pipes 34.

"The pipes 34 are said to discharge oil through the fan in such a way that the fan blades do not strike the oil streams."

Claim 12 is typical, further explains the nature of the device, and is as follows:

"12. An oil burner comprising an annular wall, a fan having a disk-like body provided with an annular skirt depending from its periphery, said skirt having a multiplicity of blades projecting outwardly therefrom, said fan being supported for rotation above and in closely spaced relation to said annular wall, a distributor head having radially extending pipes disposed within said fan and terminating relatively close to said skirt, and openings in said skirt opposite said pipes, said openings being spaced from said blades so that oil may be discharged without interference from said blades."

On November 6, 1934, the appellants copied claims 7 and 8 of a patent to Meikle, No. 1,977,521, issued October 16, 1934, for purposes of interference. On November 14, 1934, the Examiner finally allowed certain of appellants' claims, and rejected others, including those here in controversy. These latter claims were rejected on two grounds, first, that they were for new matter, not included in the original patent; second, on the reference: Meikle, 1,977,-521, October 16, 1934 (issued on application Serial No. 706,456, filed January 13, 1934, as a division of an application Serial No. 291,-032, by G. Meikle, filed July 7, 1928, entitled "Method of and Apparatus for Producing Combustion").

On appeal, the Board of Appeals differed with the Examiner and reversed him as to his first said ground of rejection and affirmed his decision as to the rejection on Meikle. From that decision, the appellants have appealed.

Both tribunals in the Patent Office held that the Meikle patent, No. 1,977,521, should be given the date of the parent application, namely, July 7, 1928. If given this date, it would antedate appellants' original patent, dated October 18, 1932. On the other hand, appellants claim that the Meikle patent, No. 1,997,521, was based on a disclosure of new subject-matter, not found in the parent application, that it was not a true division of the original subject-matter, and that, therefore, the Meikle divisional patent was not entitled to the date of the original application, but must be restricted to the date of filing of its own application. The determination of the controversy depends upon this point.

In the parent application of Meikle, filed July 7, 1928, the applicant disclosed a burner head by means of which liquid hydrocarbon fuel was conducted into a revolving breaker member, and from which it was thrown out by contrifugal force in a separated and atomized form to be burned, together with air, upon a baffle structure on the periphery of a hearth. The breaker member consisted of a revolving cup with tubes, and a top, cap-shaped member with a flange covering the same, the flange being cut away at places, and being provided with baffles at such points. The liquid hydrocarbon fuel was drawn or forced into the burner head for atomization through tubing 78. As shown by the original drawings accompanying this application of Meikle, these pipes were shown to terminate close to the periphery of the flange, so that fuel might be ejected, free from the interference of the baffles or blades of the breakers.

In the specification of this application, the nature and function of the breakers and their baffles were thus explained:

"In order to insure proper atomization of the liquid hydrocarbon fuel and the proper admixture of air for combustion purposes, the nozzle or cup member 16 is provided with a top member 30 that is secured to the shaft 22 so as to rotate therewith, the top member having an outwardly —and downwardly—extending flange 31 which intercepts the combustible mixture emitted from the edge of the nozzle or cup 16 when rotating. For this purpose the flange has segments thereof cut away and is provided with baffles 32. The top members thus constructed are termed "breakers," since they operate to effect a more complete atomization of the hydrocarbon

fuels and entrainment of air in the process of combustion. * * *

"Any convenient arrangement may be employed for this purpose, for example, the disposition shown in Fig. 3 where it is seen that the blades 32 have a direction somewhat inclined to a radius drawn through its middle point, the inclination of the blades here being such that they respectively lie substantially along the paths of the trajectories of fuel particles when they leave the lip or edge of the nozzle at the point opposite which the respective baffles are disposed. * * *

"The breakers thus constructed, perform a three-fold function, namely, first, that of cooperating with the burner nozzle to effect substantially complete atomization of the hydrocarbon fuel projected from the burner nozzle; second, that of redistributing the combustible mixture projected from the burner nozzle in a plurality of horizontal and vertical radial planes instead of in a single sheet; and third, that of entraining air and other gases which are admixed with the combustible mixture projected from the burner. * * *

"Here more air may be added to the mixture, the resultant mixture passing out over the nozzle lip at points adjacent the pick-tubes 17 toward the openings in flange 31. In passing through these openings, the fuel particles come in contact with baffle blading 32 where they are further atomized in a plurality of vertical and horizontal planes. * * *

"As this hydrocarbon stream, issuing from the tubing 78, passes through the outer breakers, it is seen to become atomized to provide the combustible mixture desired."

In consideration of this application, the Examiner called the applicant's attention to the fact that his drawings and specification conflicted, stating:

" * * * Since the tubing 78 extends almost to the outer ends of blading 82 as seen in Fig. 10, it is apparent that the hydrocarbon stream from each tube 78 will be thrown clear of the blades and will not pass through them to become atomized thereby. * * *

"The 'means' in line 4 are the breaker blades of Figs. 1 to 7 but since the blades of the so-called breaker of Figs. 8 to 10 do not function to atomize the oil this cannot be read on Figs. 8 to 10."

In response to this, on January 23, 1929, Meikle filed an amendment and remarks,

in which explanatory remarks, he said, in part:

"The Examiner's objection to lines 7, 8, and 9, page 6, is also noted and a word of explanation is thought to suffice.

"In the present invention, a sheet of fuel is not thrown out as in many burners of the prior art. Instead globules are thrown off from the lip of the burner cup which are mechanically atomized still further by the blades 32 and then thrown radially outwardly as very fine particles. * *

"The description at the bottom of page 12 has also been amended to avoid the objection noted. The objection to the description of Fig. 7 is believed to be avoided.

"The objection to the disclosure on page 14 is also believed to be taken care of by the above remarks, when it is remembered that the fuel here at no time is a continuous sheet but a plurality of particles. As a consequence, the blading 82 shown in Fig. 10 does cooperate in atomizing the fuel as above explained, although the larger portion of this blading is employed in moving air. * * * The Examiner has correctly construed the means referred to in line 4 but is mistaken in assuming that the same element is included twice in his construction of the claim as to the means in line 5. The means referred to in line 5 comprises the holes at 34 together with the blades 32 in Fig. 1."

On September 26, 1929, the Examiner repeated his rejection, saying, in part:

"The objection of record to page 14, last three lines, is repeated. Since the oil does not contact with blading 82, the blading cannot atomize the oil. * * *

"However, in Figures 8 to 10, there are no means associated with the head for atomizing the fuel since, as above brought out, the fuel is thrown clear of the blades 82 in Figures 8 to 10."

Thereafter, on March 19, 1930, the attorneys for Meikle made the following request to the office:

"It is requested that the drawing in the above entitled case be amended, and that the draftsman be instructed to make the following changes: * * *

"In Figs. 8 and 10, it is requested that the tubes 78 be shortened and the baffle structure 82 be indicated as in front of the same, as indicated in red in the accompanying sketch, in order thereby that the drawing may correspond with the description in the specification and claims."

Meikle also filed an affidavit on March 19, 1930, under rule 76 of the Patent Office, in which affidavit he said, in part:

"The breaker blades interposed in the path of the fuel globules further atomize the particles by collision, and since these blades are in a state of relatively rapid rotation, a field of force operates across them, so as to cause the fuel particles to flow along the same in a direction substantially radial with respect to the rotating fuel cup. * * * and I have noted that the fuel particles when they collide with a breaker blade, disintegrate into a number of smaller particles which tend to spread themselves along the vertical edge of a rotating breaker blade. * * * Each breaker blade operates in substantially the same manner. On account of the collision of the stream of fuel particles with the edge of my burner cup, breaker blades are only required to be placed along a relatively small arc of the circumference of the burner cup adjacent a pick tube, in order adequately to atomize all the fuel projected by the burner cup. I, therefore, use a group of blades associated with each pick tube to accomplish the complete atomization of all the fuel lifted by the burner cup of my invention. * * *"

On December 6, 1930, the proposed change of drawings was made, and figures 8 and 10 were so changed as to show the tubes 78 terminating back of the outer row of baffles. Thereafter the application was put into interference with the application of one Heath, which interference, so far as this record shows, is still pending.

The conclusion is inescapable, from this record, that in his parent application, Meikle discloses a device in which atomization of the fuel is caused, in part, by contact with breaker blades or baffles and that, to help accomplish this purpose, the conductor tubes deliver the fuel from a point back of the outer blades.

A further consideration of the record makes it quite evident that Meikle departed from this disclosure in his divisional application and patent. Here he filed, as a part of his application, copies of the drawings originally filed in his parent application, showing the conducting tubes terminating near the circumference of the breaker head, substantially flush with the periphery of the breaker blades. In his specification he says, in part:

"* * * As this hydrocarbon stream or jet, issuing from the tubing 41, passes

through the space or gap between a pair of the outer breakers, it is seen to become atomized to provide the combustible mixture desired. * * * This baffle structure is disposed to function in a three-fold manner, namely, to deflect the impinging gases upwardly; to retard the gases in their course upon impingement; and to store heat."

In our view of the case, Meikle's disclosure, in this respect, was of new matter. Here he sought and obtained a patent upon subject-matter which he had disclaimed in his parent application. It is our opinion, on examination of said parent application, that, at the time it was filed, Meikle had no conception of the invention here involved. Certainly, therefore, his divisional patent should not be given the date of the parent application. The Examiner makes the following suggestion, which, apparently, is approved by the Board of Appeals:

" * * * While it is true that Figs. 8 and 10 of the Meikle application Serial No. 291,032, were later amended to show a construction which does not agree with the device shown in the patent, the figures in the patent drawing agree in all respects with the drawings as originally filed in Meikle's application Serial No. 291,032 (being Figs. 1, 8, 9, and 10 thereof), and it is held that the changes made in Figs. 8 and 10 of the above drawings were improperly made. Meikle is within his rights in correcting an error made during the prosecution of his parent application; the filing of his divisional application is a partial correction to be completed by subsequent restoration of the drawings and specification of the parent application to their original forms."

This, apparently, is an attempted confession and avoidance on the part of the Patent Office. If the office was right in requiring amended drawings in the parent application, and we think it was, it is wrong now. Nor have we been advised that it was legally permissible to amend a parent application by the filing of a divisional application.

The Solicitor for the Patent Office relies upon Writer v. Kiwad, 63 F.(2d) 259, 20 C. C.P.A.(Patents) 869, as supporting the decision of the Board of Appeals. As it seems to the court, that case is clearly distinguishable from the case at bar. In the case cited, in Kiwad's original application, he showed two separate structures for making hats, and division was required by the Examiner. Kiwad canceled out the claims,

drawings, and descriptive matter relating to one of the species. The court held that he had not abandoned the invention as to this species thereby, but might have the benefit of the date of filing of the parent application in further proceedings, as to the divisional application. This differs much from the case at bar wherein a disclosure originally made in a drawing is voluntarily corrected as being improper and another form substituted, in order to procure allowance.

The decision of the Board of Appeals is reversed.

Reversed.

HATFIELD, Associate Judge (dissenting).

Claims 12 and 26 are illustrative of the claims here involved. They read:

"12. An oil burner comprising an annular wall, a fan having a disk-like body provided with an annular skirt depending from its periphery, said skirt having a multiplicity of blades projecting outwardly therefrom, said fan being supported for rotation above and in closely spaced relation to said annular wall, a distributor head having radially extending pipes disposed within said fan and terminating relatively close to said skirt, and openings in said skirt opposite said pipes, said openings being spaced from said blades so that oil may be discharged without interference from said blades.

"26. In an oil burner, a motor driven rotatable head having fuel distributor tubes, and a fan surmounting the head and having a turned peripheral edge portion carrying a plurality of fan blades, said peripheral edge portion having a plurality of openings extending therethrough at points adjacent said fan blades, the discharge ends of said fuel distributor tubes terminating adjacent openings in said peripheral edge portion between a pair of said blades spaced circumferentially a greater distance than an adjacent pair of blades for discharging streams of fuel through said openings substantially free from blade impact."

The reference is: Meikle, 1,977,521, October 16, 1934 (issued on application Serial No. 706,456, filed January 13, 1934, as a division of an application Serial No. 291,032, by G. S. Meikle, filed July 7, 1928, entitled "Method of and Apparatus for Producing Combustion").

Appealed claims 25 and 26 are claims 7 and 8 in the patent to Meikle, No. 1,977,521, and were copied by appellants for the purpose of interference.

As noted in the above description of the reference, the Meikle patent was issued on an application claimed to be a division of a prior application, serial No. 291,032, which alleged parent application was pending in the Patent Office at the time this case was decided by the Board of Appeals.

The invention in issue relates to oil burners of the rotary type, and, for the purpose of this case, is sufficiently described in the appealed claims.

The issue here, so far as the structure defined in the appealed claims, e. g., claim 26, is concerned, relates to the fuel distributor tubes.

It will be observed that claim 26 calls for "the discharge ends of said fuel distributor tubes terminating adjacent openings in said peripheral edge portion between a pair of said blades spaced circumferentially a greater distance than an adjacent pair of blades for discharging streams of fuel through said openings substantially free from blade impact."

It is clear from the record, and it is conceded by counsel for appellants, that Meikle's parent application as originally filed disclosed in the drawings the structure claimed in his divisional application. Counsel for appellants contend, however, that Meikle's written specification, explaining the mode of operation, was inconsistent with the structure disclosed in the drawings, and that the device would not operate as claimed by him.

It appears from the record that during the prosecution of the alleged parent application, there was considerable discussion between the Examiner and counsel for Meikle as to whether the invention disclosed and claimed in that application would operate in the manner claimed, the Examiner taking the view that as the fuel tubes extend "almost to the outer ends of blading 82 as seen in Figure 10 it is apparent that the hydrocarbon stream from each tube 78 will be thrown clear of the blades and will not pass through them to become atomized thereby." Although it appears that, for a time, counsel for Meikle disagreed with the views of the Examiner, they eventually acquiesced therein, and, on March 19, 1930, requested that the Patent Office drawings be modified by showing a shortening of the tubes, and the "baffle structure 82" be indicated as in front of them, "in order thereby that the drawing may correspond with the description in the specification and claims." The drawings were so modified on June 29, 1931.

Counsel for appellants contend that subsequent to the amendment made on June 29, 1931, Meikle's parent application did not disclose the structure, nor contain a description, of the involved invention, and that, therefore, there was nothing in the alleged parent application upon which his divisional application, which matured into patent No. 1,977,521, could be based; that Meikle was not entitled to the filing date of his parent application for constructive reduction to practice of the involved invention, which he claimed in his alleged divisional application; and that, accordingly, the patent issued on the alleged divisional application is not a proper reference.

The Primary Examiner disagreed with counsel for appellants, and held that Meikle's parent application clearly disclosed the involved invention; that his application which matured into patent No. 1,977,521 was a true division of his parent application; that Meikle was entitled to the filing date of his parent application for constructive reduction to practice of the invention claimed in his divisional application; that in view of the fact that appellants failed to establish by affidavit, as provided by rule 94 of the Rules of Practice in the United States Patent Office, that they made the invention prior to the filing date—July 7, 1928—of Meikle's parent application, they were not entitled to have their application placed in interference with the Meikle patent; and that the Meikle patent was a proper reference.

In affirming the decision of the Primary Examiner, the Board of Appeals said:

"The disclosure in the Meikle patent has been carved out of the disclosure of the earlier Meikle application as filed on July 7, 1928. During the prosecution of said earlier application the Office was instructed to shorten the tubes 78. It is applicants' position that Meikle should not have been permitted in his divisional application to show the tubes of the original length in view of such instructions and in view of an affidavit in the earlier Meikle application as to the manner in which the spray is formed. *The affidavit is not inconsistent with the manner of formation of the spray in other modifications of the Meikle device.*

880

"The examiner holds that the proposed changes in the earlier Meikle application involved new matter and that the disclosure of the Meikle divisional application is consistent with the original disclosure in the earlier Meikle application.

"We are of opinion that the examiner's conclusion in this respect is sound. Clearly enough, as originally shown there were no blades opposite the ends of the pipes and the pipes were of such length that the illustrated blades could not interfere with the projection of the oil from the ends of the pipes. The statement at the bottom of page 14 of the specification that 'as this hydrocarbon stream, issuing from the tubing 78, passes through the outer breakers, it is seen to become atomized to provide the combustible mixture desired,' does not necessarily mean that the breakers contribute to the atomizing action as they do in the other forms of the Meikle device." (Italics ours.)

Appellants' contentions, relative to the facts in issue, are two-fold: First, although Meikle's parent application may have disclosed the structure of the involved invention, there was an inconsistency between the written description of the mode of operation and the "structure," which inconsistency was not corrected until his alleged divisional application was amended on September 14, 1934, by the insertion of the following statement, " * * * The jet or stream of fuel passes into the combustion chamber substantially free from impact with the fan blades due to the preferred construction, herein disclosed by way of example, in which the end or ends of the fuel distributor tube or tubes terminate at a point or points adjacent the fan blades and preferably in a position to discharge the jet or stream of fuel outwardly through a space between the peripherally disposed fan blades * * *;" second, as the drawings in the parent application were amended on June 29, 1931, by showing a shortening of the fuel tubes, there was thereafter no disclosure whatsoever of the involved invention in the parent application.

The structure here involved was fully disclosed both in the drawings and in the written specification of Meikle's parent application as originally filed. I quote from his specification as it appears in the record:

"A burner head structure adapted for supplying a greater volume of combustible than any of the proceeding constructions is shown in Fig. 8. In the construction here shown, the burner cup 16 has pick tubes 17 cut off in horizontal planes [parallel][1] a short distance above the base of the cup and has tubing 78 connected thereto leading radially outward through slots 79 cut in the edge of the cup 16. The breaker head in this instance comprises a pair of nested breaker members 80 and 80', the member 80 being a large outside one, whereas the member 80' is smaller and has its depending flange portion disposed within that of the breaker 80. The blading for these breakers is shown respectively at 82 and 82'. This blading is preferably disposed entirely about the circumference of the breaker, as indicated in Fig. 9. The manner in which this blading is provided is shown more clearly in Fig. 10 where it is seen that a blade member 82'' is shown as a bent-back wing, cut from a rectangular opening 81', formed in the depending flange of the breaker. The tubing 78 is seen to pass through the blading 82' [''][1] extending adjacent [into][1] the blading 82. This tubing is preferably flattened so as to have a relatively elongated outer end which may be disposed diagonally across the space of one of the breaker blades. In this manner the stream of fuel lifted by a pick tube issues as a relatively flat stream, which, by reason of the diagonal disposition of the end of the tube across the blade structure, as shown in Fig. 9, readily breaks vertically distributing itself in [into][1] a plurality of horizontal planes. While the burner cup or nozzle, shown in Fig. 8 has air openings, as shown at 19', the air which passes through these openings is not mixed within the cup with the hydrocarbon fuel. The air which is thus drawn into the cup, passes on to be mixed with the fuel over the hearth in the combustion chamber; this blading being extended entirely about the circumference of the breaker is adapted to set in motion a large amount of air. The liquid fuel lifting means is also adapted to lift a corresponding large amount of fuel."

Immediately following the description of the elements of the involved structure, Meikle stated that, "As this hydrocarbon stream, issuing from the tubing 78, passes through the outer breakers, it is seen to become atomized to provide the combustible mixture desired."

It is true that the last-quoted statement is not a full and complete description of the

[1 Words and figures inclosed in brackets erased in copy.]

mode of operation of the disclosed structure. Nevertheless, it is not inconsistent with the proposition, which is not challenged here, that the oil was discharged from the fuel distributor tubes "substantially free from blade impact," as called for in the appealed claims.

Rule 71 of the Rules of Practice in the United States Patent Office provides that "no change in a drawing may be made except by permission of the office," and then only after a photographic copy of the original drawing has been filed.

No showing having been made to the contrary, it will be presumed that the mandates of rule 71 were complied with.

Counsel for appellants contend that the involved *invention* was not *clearly* disclosed in Meikle's parent application as originally filed, and it is asserted in the majority opinion that he never had any conception of it. Nevertheless, no claim is made here, either by counsel for appellant or by a majority of the court, that the invention was not sufficiently disclosed therein to enable one skilled in the art to construct and use it. It is stated, however, in the majority opinion that Meikle "sought and obtained a patent upon subject-matter which he had disclaimed in his parent application." Just why he should *disclaim* something he never had disclosed is not explained.

Meikle having clearly disclosed a structure by which a new and useful result was obtained, and on which the appealed claims read, it is immaterial whether he understood or correctly stated in his parent application, or in his divisional application, so far as the issues here are concerned, the scientific principle upon which it operated. In re Modine, 57 F.(2d) 355, 19 C.C.P.A. (Patents) 1058.

In my opinion, there is nothing of record to indicate that Meikle either disclaimed or abandoned the involved invention, which, as hereinbefore stated, he fully disclosed both in the drawings and in the written specification of his parent application, by the amendment made to the parent application on June 29, 1931, or that the disclosure of it was physically withdrawn from the "file wrapper" of that application. He might properly have been permitted to withdraw the amendment, and to present claims to the involved invention in that application for interference purposes. Writer v. Kiwad, 63 F.(2d) 259, 20 C.C.P.A. (Patents) 869, 878. During the prosecution of an application, an applicant always has the right to withdraw amendments thereto, *and it is elementary* that cancellation of drawings and written descriptions of, and claims to, an invention disclosed therein is not an abandonment of such invention under those circumstances. It is only when he has permitted his application to mature into patent without the filing of a divisional or other application reasserting his right to the invention theretofore canceled that any question arises as to his rights in the premises. Hobbs v. Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586; Overland Motor Company v. Packard Motor Car Company et al., 274 U.S. 417, 47 S.Ct. 672, 71 L.Ed. 1131; Montgomery Ward & Co., Inc., v. Gibbs (C.C.A.) 27 F.(2d) 466; Cosper v. Gold, 36 App.D.C. 302; Hartford-Empire Co. v. Obear-Nester Glass Co. et al. (C.C.A.) 71 F.(2d) 539. Furthermore, "divisional applications are not to be dealt with in a hostile spirit, but are to be—'favored to the extent that, where an invention clearly disclosed in an application * * * is not claimed therein, but is subsequently claimed in another application, the original will be deemed a constructive reduction of the invention to practice and the later one will be given the filing date of the earlier, with all of its priority of right.'" Webster Elec. Co. v. Splitdorf Elec. Co., 264 U.S. 463, 44 S.Ct. 342, 345, 68 L.Ed. 792.

Counsel for appellants contend, and the majority of the court holds, that the only support in Meikle's divisional application for the subject-matter of the appealed claims was introduced by the amendment of September 14, 1934, hereinbefore quoted; and that the amendment involved new matter.

I am unable to concur in those views. In my opinion, the amendment includes nothing more than a partial description of a structure theretofore fully disclosed, both in the parent and divisional applications, and, in addition thereto, a statement that the fuel was discharged through "a space between the peripherally disposed fan blades." *The structure could operate in no other way.* Accordingly, the stated mode of operation would be obvious to one skilled in the art.

I am of opinion, therefore, that Meikle's application, which matured into patent No. 1,977,521, was a true division of his parent application; that the patentee Meikle is entitled to the filing date—July 7, 1928—of his parent application for constructive reduction of the involved invention to prac-

tice; that as appellants failed to establish by affidavit, in accordance with rule 94, supra, that they had made the invention prior to July 7, 1928—the filing date of Meikle's parent application, they were not entitled to have their application placed in interference with the Meikle patent No. 1,977,521; that the Meikle patent is a proper reference; and that, for the reasons stated, the appealed claims are unpatentable to appellants.

GARRETT, Associate Judge, concurs.