## MEIKLE v. TIMKEN–DETROIT AXLE CO.

### No. 6653.

District Court, E. D. Michigan, S. D.

April 15, 1942.

Arthur M. Smith and A. E. Wilson, of Gray & Smith, both of Detroit, Mich., for plaintiff.

William A. Strauch, James A. Hoffman, and James E. Nolan, of Strauch & Hoffman, all of Washington, D. C., and John E. Gallagher, of Detroit, Mich., for defendant.

TUTTLE, District Judge.

This is an action by George Stanley Meikle of West Lafayette, Indiana, against The Timken-Detroit Axle Company of Detroit, Michigan, for infringement of U. S. Reissue Letters Patent No. 20,939 of December 6, 1938, and U. S. Letters Patent No. 1,977,521 of October 16, 1934, both issued to the plaintiff as patentee.

The present suit was instituted by the plaintiff, George Stanley Meikle, against The Timken Silent Automatic Company, for which party The Timken-Detroit Axle Company has been substituted.

The action is for infringement of U. S. Letters Patent Re. 20,939, issued December 6, 1938, and U. S. Letters Patent No. 1,977,-521, issued October 16, 1934. Plaintiff is the patentee in both patents, which relate to apparatus for producing combustion. Infringement was charged of oil burner structures manufactured by defendant and identified in this litigation as Plaintiff's Exhibits "A" to "M", inclusive. Defendant has filed an answer and counterclaim. Issue has been joined as to the allegations of validity and infringement of plaintiff's patents and of defendant's counterclaim.

The parties to this litigation, proceeding in accordance with the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, had developed, by extensive demands for admissions of facts, and responses thereto, under Rule 36, and by interrogatories under Rule 33 and particulars under Rule 12(e), such a complete record on the controverted issues of validity and infringement that this case was submitted to the court and heard on motions for summary judgment filed by both parties (under Rule 56). The decision of these controverted issues was greatly facilitated by this procedure. All of the pertinent facts were before the court on this record which had been made by the parties and upon which their motions for summary judgment were based. It was unnecessary to call witnesses or take testimony in open court bearing on these issues. Since both parties had presented motions for summary judgment, the court under the broad provisions of Rule 16 may treat such motions as a pre-trial procedure and dispose of all

issues upon which the parties have developed their record under Rules 12(e), 33 and 36. Issues upon which the record is not fully developed at the time of hearing such motions may be tried separately under an appropriate order under Rule 42. Where, however, the court finds that disputed matters of fact are involved, and the parties are unable to develop a record upon which the court can decide such issues, motions for summary judgment cannot be looked upon with favor. Refractolite Corp. v. Prismo Holding Corp., D.C., 25 F.Supp. 965; Clair et al. v. Sears, Roebuck & Co., D.C., 34 F.Supp. 559; Charles Blum Advertising Co. v. L. & C. Mayers Co., Inc., D.C., 25 F.Supp. 934; Van Wormer v. Champion Paper & Fibre Co., D.C., 28 F. Supp. 813.

■ Where, however, as in the present case, the facts relied upon by each party pertaining to the construction and operation of the devices of the patents in suit, of defendant's structures alleged to infringe, and of the construction and operation of the prior art references, have been developed by the parties under the appropriate Rules of Civil Procedure, the course adopted in this litigation should be encouraged. On such a record, the court can consider and decide such factual issues with a substantial saving of time, expense and effort. Having determined these factual issues, the court can decide the legal issues arising therefrom.

■ The record has not been developed by the parties on the issue of defendant's counterclaim. The issues of defendant's counterclaim are, therefore, separated under the provisions of Rule 42 of the Federal Rules of Civil Procedure and the present opinion is rendered only on the issues of the validity and infringement of plaintiff's patents.

This court's detailed findings of fact and conclusions of law under Rule 52, reached as a result of inquiry and careful consideration of.the numerous exhibits presented at the hearing, and of the full explanations of the patents in suit, prior art, and the accused structure, and of full argument by counsel at the hearing, together with the detailed statement of the material to be included in the record for such further procedure as may be taken, are set forth in an order entered under the provisions of Rule 42(b). It was unnecessary to have any part of the hearing reported, or to take testimony of any witnesses under oath, although the court was prepared to do so at any time during the procedure at the request of either party. In addition, illustrative exhibits of the accused structures were introduced by agreement of counsel, and by stipulations entered, as exhibits.

The results of the procedure in this action, involving complicated history and facts and highly technical patent matters, convinces this court that determination of many causes, even though highly technical, can be expedited materially, and the costs to litigants, as well as the burden on the courts of lengthy trials, materially reduced by summary procedure of the type adopted in this cause. The satisfactory results in this cause, in which the actual trial time of the court in disposing of the issues of validity and infringement did not exceed four days, it is appreciated, were due largely to the frank cooperation and fairness of counsel for both parties. However, even with recalcitrant counsel, the rules of civil procedure give the courts ample power to call for a pre-trial hearing under Rule 16, and to force an explanation of the issues, including in patent suits the prior art, the patents in suit, the accused structures, and defenses based on the file wrapper. In this way, the court, even if it cannot dispose of all the issues, will in most cases be able to dispose of some of them.

Having dealt with the procedure, the essential facts and the numerous issues of this particular cause will now be taken up.

The patents in suit were issued after a great deal of prosecution in the Patent Office and the Meikle patent No. 1,977,521 was the subject matter of the decision of the Court of Customs and Patent Appeals in Ex parte Alden & Powers, 81 F.2d 875, 23 C.C.P.A., Patents, 931.

The patents in suit relate to fuel oil burners. The burner structures are designed to mix fuel oil and air to provide a combustible mixture which is burned to heat the combustion chamber of a furnace. In the patents in suit this combustible mixture is formed as a result of the rotation of the burner head. The fuel oil is supplied thereto by means of rotary pick tubes in patent No. 1,977,521 and in two of the forms of patent Re. 20,939. In the form of structure shown in Fig. 1 of patent Re. 20,939, the patentee provided a stationary or fixed oil feeding tube which he says was designed to provide a "spray or jet" of the hydrocarbon fuel which was to be dis-

charged into tubular passages from which was discharged a spray or jet containing fuel oil which was to be further mixed with air in the breaker head.

It seems clear that the patentee intended to form jets or streams of a combustible mixture within the rotating heads of the structures of both patents in suit. The amount of air which is mixed with the fuel oil is the determining factor as to whether or not the mixture is a combustible mixture. In all of the forms of apparatus suggested by the patentee, a sufficient amount of air is mixed with the fuel so that the mixture which is projected from the burner head is a "combustible mixture" as this term is used by the patentee.

In patent No. 1,977,521, the mixture of entrained air and oil which passes upwardly through the pick tubes from the oil reservoir is probably a less "combustible mixture" than is the mixture of fuel oil and air which is projected from the rotating member shown in Fig. 1 of patent Re. 20,939.

In patent Re. 20,939 the combustible mixture is projected at such a velocity from the burner head that ignition of the mixture will occur at a distance from the head and at a point adjacent the walls of the combustion chamber. Such burners are known as "wall flame" burners.

Now taking up the prior art, rotary oil burners have been known for many years, as shown by U. S. Patents to Gibbs No. 752,900, issued February 23, 1904, Lucas No. 957,976, issued May 17, 1910, and Fesler No. 1,026,663, issued May 1, 1912. These early burners were all of the so-called "torch-type". They atomized the fuel and mixed it with air to form a combustible mixture at the head. The resulting flame burned above the burner head in a swirling, torch-like flame.

Two ways of getting oil up to the rotary head and mixing it with air to form a combustible mixture were used in these early burners. In the patent to Gibbs, the oil was drawn from a well by the centrifugal force of the rotating head and thrown out horizontally through tubes. Fan blades on the rotating head supply the air forming the combustible mixture. In the patents to Lucas and Fesler, the oil is fed from stationary feed pipes into rotating cups in the heads, and from the cups by centrifugal force out through tubes or passages. These old methods of feeding and distributing the oil are used by defendant and its predecessors in the eleven accused models of burners in suit except the Silent Automatic Model A burner. Neither of these old methods used by plaintiff is disclosed in the patents in suit.

A typical claim of patent No. 1,977,521 is claim 5, which reads as follows: "5. In an oil burner, a motor driven rotatable head, fuel distributor tubes projecting outwardly from the head, and a fan surmounting the head and having a peripherally disposed plurality of fan blades substantially vertically intersecting the horizontal plane of the discharge ends of the tubes, the outer discharge end of each tube terminating proximate to said blades so as to direct a jet of fuel outwardly and laterally through the space between a pair of blades substantially free of blade impact."

Every feature of this claim is, in my opinion, shown in Gibbs patent No. 752,900, issued February 23, 1904. The Gibbs patent shows in Fig. 3 the driven head having a fan and fuel distributor tubes which are supplied with oil from a hollow shaft extending into an oil reservoir. The fuel discharge tubes extend along the vanes of the fan and discharge the fuel at points proximate to the ends of the blades. This will direct a jet or stream of fuel outwardly and laterally through the space between a pair of blades substantially free of blade impact. This is what the plaintiff was claiming in his patent No. 1,977,521. The Gibbs patent was not cited as a reference by the Patent Office during the prosecution of the application which matured into patent No. 1,977,521.

It has been argued that claims 1, 10 and 11 of patent No. 1,977,521 call for a device having a rotatable cup and that the Gibbs reference does not disclose a rotatable cup member. The rotatable cup referred to in these claims acts in the structure of the patent in suit merely as a carrier or support for the fuel pick-up and the fuel distributing tubes. It does not perform any function comparable to the function performed by the rotating cup in defendant's structures. If, therefore, claims 1, 10 and 11 are valid over Gibbs because of the provision of the rotatable cup feature, they are not infringed by defendant's structures.

The idea of a rotatable cup is shown in Lucas patent No. 957,976, issued May 17, 1910, and in Fesler patent No. 1,026,663, issued May 21, 1912. Both of these patents

show rotatable cups through which the hydrocarbon oil is conveyed. The combination of the structure of the rotatable tube carrying member in the Lucas patent No. 957,976 with the fuel distributing tubes terminating adjacent the ends of the fan as shown in Fig. 3 of the Gibbs patent No. 752,900, anticipates claims 1, 10 and 11 and the claims are therefore invalid.

The argument also has been made that claims 2, 3 and 4 of patent No. 1,977,521 specify the point of terminating the fuel tubes adjacent to but short of the outer edges of the fan blades. This structure is shown in the Gibbs patent No. 752,900. Here the tubes terminate at the ends of the adjacent fan blades. It does not amount to invention to eliminate a portion of the end of the tubes of the Gibbs patent No. 752,900 so that they terminate short of the outer edges, or ends, of the fan blades. The argument has been presented that this arrangement of the ends of the tubes relative to the fan blades produced a new and useful result in protecting the ends of the tubes from the radiant heat of the combustion chamber and also permitted some cooling of the tubes by the passage of air around them. It would appear that the flow of the liquid through the tubes provides a sufficient cooling effect and that this feature may have theoretical but not practical merit. These claims are, therefore, invalid for want of invention over Gibbs patent No. 752,900.

It also has been argued that claims 3, 4 and 6 of patent No. 1,977,521 are valid over the Gibbs reference inasmuch as they are directed to the spacing of the blades of the fans opposite the discharge ends of the tubes. This construction appears to provide an efficient type of fan structure but, as shown in defendant's current models, it is not an essential feature to the construction of a satisfactory oil burner of this type. The patentee embodies this feature in his device in a fan structure in which the fan blade was removed adjacent the end of the fuel discharging tube. In the Gibbs patent a different type of fan structure is employed from that shown in the patent in suit so that it was not necessary to remove a fan blade in order to accomplish the same results which the patentee accomplishes by the removal of the fan blade. The selection of the particular type of fan employed by the patentee in place of the fan proposed by Gibbs amounts to mechanical skill rather than patentable

invention and it required mechanical skill, rather than invention, to remove the fan blade adjacent the discharge ends of the tubes so that the fuel could flow through the tubes and be discharged free of contact with the blades. Claims 3, 4 and 6, are, therefore, invalid for want of invention over Gibbs.

The argument has been presented that claim 9 of patent No. 1,977,521 distinguishes patentably from the Gibbs reference in that this claim calls for a fan having a turned peripheral edge portion which is pierced to form a plurality of peripherally disposed fan blades. The use of such a fan in an oil burner presents nothing novel inasmuch as all the patentee did was to substitute this particular type of fan for the fan of the Gibbs reference. In either instance the fan supplies air for mixture with the fuel oil. Whether the fan used is of the particular type called for in claim 9, or whether it is of the form used by Gibbs, appears to be immaterial, as defendant in its commercial structure has used both types of fans. Claim 9 is, therefore, invalid for want of invention over Gibbs.

In August 1925, Forrest A. Heath applied for patent No. 1,707,474, issued April 2, 1929. As explained in this patent, a rotary "pick-tube" fan head forms a carbureted highly combustible mixture in the head and projects this mixture to the wall of the combustion chamber at a velocity greater than the velocity of propagation of flame through the mixture. At the periphery of the hearth refractory material was applied to the boiler wall to prevent the mixture from contacting with the cold boiler wall as shown in Fig. 2 of Heath.

The burner head structures shown in the Heath patent are substantially identical with those of Figs. 2 to 6 of Meikle patent Re. 20,939, and with that of Fig. 1 of patent No. 1,977,521. In all of these constructions, oil and air are forced into the rotating pick-tubes from a stationary oil well, and streams of fuel and air pass into the rotating cups from the tops of the pick-tubes. These streams mix with more air in the cups and strike the walls of rotating cups and then pass over the lips of the cups in streams of atomized oil and mix it with air. The combustible mixture is then projected across the hearth of the furnace striking the refractory at the edge of the hearth where it was intended to ignite and burn.

On June 24, 1926, application was made for Logan patent No. 1,667,042, issued April 24, 1928, showing a tube type fan burner head identical so far as the claims here in suit are concerned with the structure of defendant's tube-type heads (Models C, F and H) here accused of infringement.

On January 25, 1927, application was filed for Laughlin et al. patent No. 1,655,-016, issued on January 3, 1928. Meikle application Serial No. 186,625, filed April 26, 1927, was on October 24, 1930, placed in interference with an application for reissue of the Laughlin et al. patent No. 1,655,016 and priority was finally awarded to Laughlin et al. Laughlin et al. is therefore prior art against the patents in suit.

On January 29, 1932, after the Heath patent had issued, an interference was declared between it and Meikle application Serial No. 291,032, filed July 7, 1928. While the Meikle-Heath interference was in progress, Meikle issued his patent No. 1,856,720, and in February and March, 1933, brought suit thereon against defendant's predecessor, The Timken-Silent Automatic Company. This suit was later dismissed. In this suit the Timken-Silent Automatic Model C burner, which was placed on the market in 1930, was accused of infringement. This burner is illustrated in Alden & Powers reissue patent No. 20,-982 and its mode of operation is fully disclosed in Powers patent No. 2,065,393, Fig. 8. In this burner, streams of oil are projected as nearly as possible free from air to the hearth periphery, where vaporization of the oil and mixing with air to form the combustible mixture occurs, as distinguished from mixing and atomizing the oil at the head to form a combustible mixture. In November of 1932, this differing mode of operation was demonstrated to plaintiff with stroboscopic equipment to convince him that no atomization occurred. Thereafter, on April 30, 1934, the application for reissue of patent No. 1,856,720 was filed, which resulted in reissue patent No. 20,939, and it was not until July 25, 1935, that the subject matter of claims 13 and 14 of the reissue patent here in suit were filed. These claims are based on the structure of Fig. 1 of patent Re. 20,939. In this structure a jet or spray of oil from a stationary nozzle is projected into tubes of larger diameter than the oil spray or jet so as to entrain air with the jet. From the ends of these tubes, the fuel and air mixture is intended to pass successively through sets of three aligned conical baffles which are asserted to progressively increase the air content and atomization of the fuel so that a higher combustible mixture is discharged from the head. In this construction, oil that strikes near the open top of the supporting annulus does not enter the tubes nor the so-called trough recited in claims 13 and 14. This so-called trough is not mentioned in the original specification, and will not function like the trough in the accused structures. These claims 13 and 14, which were added by reissue more than five years after the structures accused of infringement were placed on the market, are based on an incomplete disclosure, are new matter and are directed to subject matter different from that covered by the plaintiff's original patent claims. They are therefore invalid under the authority of very recent Supreme Court decisions in Muncie Gear Works, Inc., et al. v. Outboard, Marine & Manufacturing Co. et al., 62 S.Ct. 865, 86 L.Ed. ——, and United States Industrial Chemicals v. Carbide Chemical Corp., 62 S.Ct. 839, 86 L.Ed. ——.

While claims 13 and 14 of the reissue patent read in terms on some of the accused structures, the accused structures differ in mode of operation and result from the patent disclosures. There can be no infringement under the authority of Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136.

The application from which patent No. 1,977,521 in suit issued was not filed until January 13, 1934. It is alleged to be a division of the application Serial No. 291,-032, but the Court of Customs and Patent Appeals ruled otherwise in the reported decision of In re Alden & Powers et al., 81 F.2d 875, 23 C.C.P.A., Patents, 931, in which the prosecution of this application is detailed. As a result of this decision, an interference was declared between patent No. 1,977,521 and the application for Alden et al. reissue patent No. 20,982, with claims 7 and 8 of patent No. 1,977,521 as the issue. Priority was finally awarded to Alden et al. in this interference, and plaintiff Meikle waited over fifteen months after this decision became final against him before disclaiming the claims he lost.

The Alden et al. reissue patent No. 20,-982, the Timken-Silent Automatic Model C burner shown in this patent and which was placed on the market in 1930, as well as the patents set up in defendant's answer, having effective filing dates prior to the

effective dates accorded Meikle, therefore are prior art for and anticipations of all of the claims of both patents in suit. Patent No. 1,977,521 is furthermore void for unreasonable delay in filing the disclaimer under the authority of Ensten v. Simon Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453, and Radio Condenser Co. v. General Instrument Corp., 2 Cir., 65 F.2d 458.

In attempting to present claims that dominate the defendant's commercial constructions of which he was aware, plaintiff included in the application for patent No. 1,977,521 during its prosecution, claims to throwing fuel jets from the tubes in the head through a space between the fan blades and clear of the blades. The patent specification, however, stated the tubes discharged combustible mixtures of fuel and air. After allowance of such claims, the specification was amended to include support for these claims. Such amendments include new matter and the patent is invalid for this reason under the authority of Permutit v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163; Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 573, 59 S.Ct. 8, 83 L.Ed. 34, and Muncie Gear Works, Inc., et al. v. Outboard Marine & Manufacturing Co. et al., supra.

While certain of the claims read in terms on the accused structures, none of the accused structures infringes either of the patents in suit because of the differences in mode of operation and result, and both patents are clearly void.

There may be in favor of defendant an order dismissing the action with costs.